| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO<br>Court Address: 1437 Bannock Street<br>Denver, Colorado 80202<br>Telephone Number: 720-865-8301 | DATE FILED: June 30, 2023 2:35 PM<br>FILING ID: A0A05121D478F<br>CASE NUMBER: 2023CV31932 |
| Plaintiff: LEE KHAUV<br><br>v.<br><br>Defendant: STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | ∆COURT USE ONLY∆ |
| *Attorneys for Plaintiff:*<br>Wesley L. Eddington, #47915<br>Richard L. Eddington, #25367<br>EDDINGTON LAW FIRM, LLC<br>2420 W. 26th Ave., Suite D-445<br>Denver, Colorado 80203<br>Telephone: 303-815-1585<br>Facsimile: 720-420-4515<br>E-mail:  wes@eddington.law<br>            rick@eddington.law<br><br>Ethan McQuinn, #36618<br>KANE, DULIN, MCQUINN, YOUNG, LLP<br>6400 S. Fiddlers Green Cir., Ste. 1840<br>Greenwood Village, CO 80111<br>Telephone: (303) 264-1111 | Case No.:<br><br>Ctrm/Div: |
| **COMPLAINT AND JURY DEMAND** | |

**COMES NOW**, Plaintiff, Lee Khauv, by and through her attorneys, Eddington Law Firm, LLC and Kane, Dulin, McQuinn, Young, LLP, and respectfully submits her Complaint and Jury Demand against Defendant, State Farm Mutual Automobile Insurance Company, and alleges as follows:

## GENERAL ALLEGATIONS

1. At all times relevant, Plaintiff Lee Khauv resided at 365 Josephine St., Unit A, Denver, CO 80206.

2. Defendant State Farm Mutual Automobile Insurance Company (hereinafter "State Farm") is an insurance company doing business in the State of Colorado.

3. Venue is proper in Denver County, Colorado, pursuant to C.R.C.P. 98(c), as Defendant State Farm is an out-of-state resident and conducts business throughout the state. Furthermore, Plaintiff's insurance policy with Defendant was issued in Denver County.

**FACTUAL ALLEGATIONS**

4. At all times pertinent hereto, including but not limited to May 14, 2019, Plaintiff was insured under an insurance policy issued by Defendant State Farm with the policy number 314-5705-F06-06L. (Hereinafter referred to as "policy" or "the policy.")

5. On May 14, 2019, Plaintiff was traveling northbound on Leetsdale Dr. when Joshua Brown failed to yield while turning right onto Leetsdale Dr. and collided with the passenger side of Plaintiff's vehicle.

6. As a result of this motor vehicle collision Plaintiff sustained severe and permanent physical injuries, sustained economic damages in the form of past and future medical expenses, noneconomic damages, including pain, suffering, inconvenience, and loss of enjoyment of life, as well as damages for permanent physical impairment. In addition, Plaintiff has been recommended to receive various forms of medical care into the future to help manage her pain. She requested that State Farm consider this future care as part of her claim.

7. All conditions precedent set forth in the policy have been satisfied.

8. Plaintiff opened a claim with State Farm for Medical Payments Coverage for the May 14, 2019 collision.

9. The only claim number established for Plaintiff's Medical Payments (MedPay) and Underinsured Motorist (UIM) claims for the May 14, 2019 collision is 06-8815-K01.

10. State Farm paid all the benefits that were available to Plaintiff pursuant to the MedPay policy, $5,000, to Plaintiff's medical providers.

11. Pursuant to the policy, State Farm only paid for medical care that was related to injuries sustained in the May 14, 2019 collision.

2

12. The Medical Payments coverage for claim number 06-8815-K01 was exhausted.

13. On January 29, 2021, State Farm received a letter of representation advising that Plaintiff had obtained undersigned counsel as legal counsel.

14. State Farm advised Plaintiff that there was $250,000 of UIM Coverage available to her for the subject May 14, 2019 collision.

15. On June 22, 2021, Plaintiff's counsel provided records from a June 16, 2021, visit to Colorado Orthopedic Consults in which her orthopedic surgeon recommended a right-sided L5-S1 microdiscectomy.

16. On July 2, 2021, the liability carrier, USAA, offered its insured's, Joshua Brown's, policy limits in the amount of $50,000.00.

17. On July 3, 2021, State Farm provided Plaintiff with written permission to settle her claim with the USAA for the tortfeasor's policy limits of $50,000.00.

18. The tortfeasor's $50,000 policy limit is less than the total damages Plaintiff suffered.

19. Under Defendant State Farm's UIM policy with Plaintiff, State Farm is required to pay UIM benefits to Plaintiff in a sum equal to the amount of compensatory damages that she is legally entitled to recover from Mr. Brown (the underinsured driver/tortfeasor) as a result of the collision, less Brown's $50,000 liability insurance limits, up to the $250,000 UIM per person policy limit.

20. Among the elements of compensatory damages Plaintiff is legally entitled to recover from the tortfeasor are: (a) physical impairment; (b) physical and mental pain and suffering; (c) emotional stress; (d) impairment to the quality of life; (e) inconvenience; (f) healthcare expenses; (g) past and future income loss; and (h) pre-judgement interest from the date of the collision at the rate of nine percent per annum, compounded annually after the date of filing suit.

21. On July 3, 2021, State Farm acknowledged receiving the estimate for future surgery and requested prior records from all treating providers Plaintiff had from 2014-2019 due to

questions about the mechanism of the injury requiring surgery. Plaintiff confirmed the only prior provider she had during this time was her Primary Care Physician at Cherry Creek Family, and a complete copy of prior records was sent to State Farm on July 29, 2021 and July 30, 2021.

22. On July 14, 2021, State Farm received a signed medical authorization allowing it to obtain medical records and billing for Plaintiff.

23. On July 14, 2021, State Farm received the completed questionnaire it provided to Plaintiff to complete.

24. On July 30, 2021, Plaintiff submitted medical records, medical bills, photographs, and other materials in support of her Underinsured Motorist Claim to State Farm.

25. State Farm also obtained medical records and medical billing using the signed medical authorization that Plaintiff provided with a list of her medical providers.

26. On August 31, 2021, State Farm wrote Plaintiff's counsel that they had reviewed Plaintiff's medical records and bills, including the June 16th recommendation for orthopedic surgery, and wrote that they would like to move forward with an Independent Medical Exam due to an alleged month delay in treatment from the time of subject collision and questions on relatedness and mechanism of injury as well as if treatment was reasonable.

27. On September 1, 2021, undersigned counsel responded to State Farm clarifying medical records had been provided showing Plaintiff sought treatment with her primary care provider on May 24, 2019, 10 days after the collision, which was the first available appointment.

28. On September 1, 2021, Plaintiff's counsel notified State Farm Plaintiff was available to have said IME as soon as possible.

29. On September 2, 2021, State Farm wrote undersigned counsel stating they would be sending all records to the IME vendor and the vendor would be reaching out to schedule the IME.

30. On September 7, 2021, Plaintiff's counsel asked State Farm to provide the vendor's contact information in order to expedite the scheduling process as Plaintiff again had to postpone

4

her necessary surgery which was recommended over three months prior. State Farm never responded.

31. On September 17, 2021, Plaintiff's counsel again wrote to State Farm requesting an update on when the IME will be scheduled.

32. On September 17, 2021, Plaintiff's counsel received correspondence from Dane Street stating the IME appointment had been scheduled for November 16, 2021.

33. On September 20, 2021, State Farm wrote Plaintiff's counsel again stating there was a month delay before Plaintiff sought treatment. State Farm also confirmed they received the records sent on June 22, 2021, and that the vendor would be reaching out to schedule the IME. As aforementioned, the vendor scheduled the IME three days prior to this letter from State Farm.

34. On September 20, 2021, Plaintiff's counsel again provided records of Plaintiff's May 24, 2019 visit to Cherry Creek Family Practice, 10 days after the subject collision, to refute State Farm's claim that Plaintiff did not treat for a month after the collision.

35. On October 5, 2021, Dane Street notified Plaintiff's counsel the IME had been rescheduled to November 15, 2021, one day before the original appointment.

36. On October 14, 2021, Plaintiff's counsel sent State Farm correspondence from Dr. Flory Kreutter at Cherry Creek Family Practice stating Plaintiff was seen on May 23, 2019 for her annual preventative examination. During this examination Plaintiff mentioned injuries related to the subject collision. Dr. Kreutter told Plaintiff she would not be able to address any medical problem evaluation and treatment relating to personal injury. Plaintiff then scheduled a separate appointment for the next day with a different doctor at the practice, Dr. Sue Thielen, to ensure a non-biased opinion regarding the personal injury evaluation and treatment plan.

37. On November 15, 2021, Plaintiff saw Dr. Stephen Lindenbaum for the scheduled IME.

38. On December 13, 2021, Plaintiff's counsel sent State Farm a request for a copy of all medical records State Farm provided to Dr. Lindenbaum to ensure he was not missing any records Plaintiff previously disclosed to State Farm, because it appeared Dr. Lindenbaum did not

5

have some important medical documentation for his evaluation (including the medical visits to Cherry Creek Family Practice and letter from Dr. Kreutter).

39. On December 15, 2021, State Farm responded and provided records that were given to Dr. Lindenbaum via CD, which Plaintiff's counsel was not able to access.

40. On July 5, 2022, State Farm tried sending another CD, but this CD never worked either.

41. On January 5, 2023, Plaintiff's counsel again requested a copy of all record and billing for Ms. Khauv's claim. State Farm never responded.

42. On January 18, 2023, Plaintiff's counsel requested State Farm provide the status of their review of the UIM claim and provide all records reviewed to date. Plaintiff's counsel asked if State Farm ever had a chance to do a recorded phone call with Plaintiff, and told State Farm that she would be made available if State Farm wanted to do one. State Farm never responded.

43. On February 8, 2023, Plaintiff's counsel again requested State Farm to provide an update on the status of their review of the UIM claim as well as provide all records reviewed to date.

44. On February 14, 2023, State Farm wrote Plaintiff's counsel advising they had completed their evaluation of Plaintiff's claim, and that they believed that Plaintiff had been fairly compensated by the tortfeasor's insurance carrier, USAA, for their insured's policy limits of $50,000.

45. In that February 14, 2023 letter, State Farm stated surgery was not being considered at the time.

46. On February 14, 2023, Plaintiff's counsel responded to State Farm's letter denying Plaintiff's UIM claim by asking how State Farm came up with their evaluation and what records were used to consider the evaluation.

47. In that letter, Plaintiff's counsel again let State Farm know that they had not been able to open any of the CDs that State Farm had sent over the last several months.

6

48. On February 28, 2023, State Farm provided a breakdown of their evaluation. State Farm's breakdown was as follows:

Special Damages (Medical Bills/Economic Loss) = $24,073.23

General Damages/Non-Economic damages = $6,000

Total = $30,072.23

Minus Underlying Bodily Injury Limits: - $50,000

Offer: $0

49. On April 4, 2023, Plaintiff's counsel sent State Farm an updated medical billing summary reflecting all billing and dates of service from Ms. Khauv's treatment. Counsel also notified State Farm Ms. Khauv had to switch pain management providers due to her new health insurance.

50. On April 21, 2023, State Farm emailed Plaintiff's counsel requesting the reason Ms. Khauv had not treated since November of 2021.

51. On the same day, April 21, 2023, Plaintiff's counsel replied explaining Ms. Khauv had stopped treating after her November 2021 pain management procedures and was told to follow up when the pain returned.

52. On April 21, 2023, Plaintiff's counsel asked State Farm a few questions regarding the action State Farm has taken, if any, to obtain Ms. Khauv's updated records using the medical authorization signed by Plaintiff that was given to State Farm in July 2021.

53. On April 24, 2023, State Farm confirmed they received the authorization and are still awaiting updated medical bills and records but left most Plaintiff's question about whether State Farm has requested updated records and bills unanswered. State Farm never responded to this.

54. On May 11, 2023, Plaintiff's counsel requested confirmation from State Farm they received the aforementioned letter sent on April 24, 2023.

7

55. On May 11, 2023, State Farm wrote Plaintiff's counsel that they had responded to the April 24, 2023 letter and attached the correspondence. However, the attached correspondence was State Farm's letter from April 24, 2023 responding to Plaintiff's April 21, 2023 letter.

56. On May 15, 2023, Plaintiff's counsel provided time stamped correspondence showing State Farm never responded to the April 24, 2023 letter and again asked for a response to the unanswered questions regarding what steps State Farm has taken to resolve this claim.

57. On May 22, 2023, State Farm emailed Plaintiff thanking counsel for the update and that State Farm will be waiting on the medical bills and records to update its evaluation.

58. On May 22, 2023, Plaintiff's counsel responded to State Farm inquiring if they considered Dr. Stephen Pehler's recommendation for surgery, which had previously been disclosed to State Farm in the past. Plaintiff's counsel again provided State Farm the recommendation for surgery as well as Accumed cost estimate for the surgery.

59. On June 14, 2023, Plaintiff's counsel followed up on the May 22, 2023 letter and provided updated records and billing information from Plaintiff's new medical provider, Center for Spine and Orthopedics. State Farm never responded to this correspondence.

60. On June 27, 2023, Plaintiff's counsel wrote State Farm again inquiring what steps State Farm has taken to affirmatively investigate her UIM claim since signing the authorization in July of 2021. Additionally, Plaintiff's counsel notified State Farm this suit would be filed should State Farm fail to pay Plaintiff what is owed under her UIM policy.

61. Plaintiff also demanded that State Farm pay what is owed under Plaintiff's UIM policy of $250,000 for the injuries and damages she sustained from the subject collision. Plaintiff stated that the demand expired on June 30, 2023 because the statute of limitations for the claim was July 2, 2023, which is a Sunday.

62. On June 28, 2023, State Farm responded to Plaintiff's letter. State Farm apologized for being unresponsive and confirmed they had not requested ANY updated medical records or bills since the initial authorization in July of 2021. State Farm requested Plaintiff's counsel delay filing suit until July 6, 2023, to give them time to finalize their evaluation.

8

63. State Farm was advised that if adjuster(s) wanted to meet with Plaintiff, those arrangements could be made.

64. No adjuster evaluating her Underinsured Motorist Claim ever met with Plaintiff since the beginning of her Underinsured Motorist Claim.

65. State Farm did not conduct any meaningful investigation into the cause of Plaintiff's injuries, preexisting conditions, or determine the extent of any aggravation of Plaintiff's health prior to the subject collision because it did not want to find information that might be favorable to Plaintiff.

66. To date State Farm has failed to submit any Summary of the Claim detailing its position, concerns, or any affirmative action to assist in its evaluation of Plaintiff's claim as her claim is still ongoing and she seeks the Underinsured Motorist benefits pursuant to the contract.

67. Plaintiff is entitled to UIM benefits based on her past medical care, future required medical care and surgery, and past and future pain.

68. State Farm has paid no UIM benefits to Plaintiff whatsoever.

69. State Farm's failure to pay UIM benefits constitutes a failure to conduct a timely and reasonable investigation and evaluation of Plaintiff's UIM claims by choosing to reject the opinions of Plaintiff's treating doctors and other neutral experts.

70. State Farm has no reasonable basis for denying UIM benefits to Plaintiff.

## FIRST CLAIM FOR RELIEF
**(Breach of Contract)**

71. Plaintiff incorporates all previous allegations as if more fully set forth herein.

72. At all times relevant to this action, Plaintiff was an insured under an insurance policy issued by the Defendant State Farm and has a contractual right to UIM benefits as a result of the May 14, 2019 motor vehicle collision.

73. State Farm promises in its contract to pay compensatory damages, up to their policy limits, to Plaintiff that she is legally entitled to collect from the at-fault driver caused by the May 14, 2019 collision.

74. State Farm promises to pay compensatory damages, up to their policy limits, caused by the negligence of a motorist with insufficient insurance to indemnify insured Plaintiff for those losses she didn't cause.

75. State Farm has been asked, through Plaintiff's counsel, to provide some, or all, of the covered benefits promised by contract, but they have steadfastly refused to honor the contract and tender the benefits they have calculated Plaintiff is entitled to under the contract.

76. State Farm by refusing to provide any UIM benefits has breached its insurance contract for compensatory damages caused by the subject crash and has caused the Plaintiff to incur damages to be determined at trial.

77. As a direct and proximate result of Defendant State Farm's breach of contract, Plaintiff has incurred damages. Plaintiff seeks her past and future medical expenses, lost wages, pain and suffering, loss of enjoyment of life, inconvenience and permanent physical impairment caused by the underinsured driver in the motor vehicle accident under the terms her his automobile policy with Defendant State Farm.

## PLAINTIFF'S SECOND CLAIM FOR RELIEF
### (VIOLATION OF C.R.S. § 10-3-1115(1)(A) AND C.R.S. § 10-3-1116(1))

78. Plaintiff incorporates all previous allegations as if fully set forth herein.

79. Plaintiff is a first-party claimant within the meaning of C.R.S. § 10-3-1115(1)(b)(I).

80. State Farm's delay in evaluating and denying or paying Plaintiff's claim for underinsured motorist benefits was unreasonable for all of the reasons set forth above in the general allegations more specifically that are incorporated herein, including but is not limited to:

    i. Failing to talk with Plaintiff;

    ii. Failing to request the physician they retained for an Independent Medical Examination to review Plaintiff's updated medical records, physical condition, and to ask her questions to help State Farm in its evaluation of her claim;

    iii. Failing to obtain all medical records with the authorizations provided;

    iv. Failing to obtain all medical billing with the authorizations provided;

    v. Failing to utilize an examination under oath or an informal meeting (or recorded statement) with Plaintiff to understand her claim and injuries, damages, and losses; and,

    vi. Other information contained within the claim file, log notes, or electronic system of State Farm regarding the claim handling that is within the sole possession, custody, and control of State Farm. Plaintiff reserves the right to supplement her claim with new facts regarding any additional delay or denial upon review of the materials within the custody and control of State Farm and the depositions of any adjusters or persons tasked with evaluating Plaintiff's claim.

81. State Farm unreasonably denied Plaintiff's UIM claim.

82. Pursuant to C.R.C.P. 10-3-1116(1), Plaintiff is entitled to reasonable attorney's fees and two times the covered benefit.

### PLAINTIFF'S THIRD CLAIM FOR RELIEF
### (BAD FAITH BREACH OF INSURANCE CONTRACT)

83. Plaintiff incorporates all previous allegations as if fully set forth herein.

84. Under Colorado law, every insurance contract contains an implied covenant of good faith and fair dealing and imposes on insurers a duty to act in good faith with their insureds.

11

Pursuant to its duty of good faith and fair dealing, State Farm owed Plaintiff an obligation to treat Plaintiff's interests with equal consideration as its own.

      85.    State Farm breached its duty of good faith and fair dealing through each of the following:

      a.    Failing to give equal consideration to the interest of Plaintiff, its insured;

      b.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

      c.    Failing to conduct a reasonable investigation as described above;

      d.    When investigating Plaintiff's claim, failing to diligently search for evidence that supported its insured's claim;

      e.    Seeking to discover only evidence that reduced the amount of damages attributable to Plaintiff's claim by not investigating the medical issues in her claim or understanding them by either talking with Plaintiff or her medical providers;

      h.    Unreasonably delaying and/or withholding benefits under the insurance policy without a reasonable basis for delaying and/or withholding benefits after failing to perform a thorough investigation as described above and incorporated herein, with knowledge of or a reckless disregard for its lack of a reasonable basis for delaying and/or withholding benefits;

      o.    Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims after its liability had become reasonably clear and as a result of the unreasonable delay and process of its investigation as described above;

      p.    Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for its dispute of her claim, value of her claim, questions of causation, damages, and other aspects of her claim, again, as described above in the general allegations

    and incorporated herein;

 q. Upon information and belief relying upon hired medical doctors, who were biased and never physically examined Plaintiff, to give opinions as to the reasonableness and necessity of an insured's medical treatment, as well as the relationship of that treatment to an insured's automobile accident;

 r. Upon information and belief, not relying upon a medical doctor's opinions qualified to offer opinions regarding causation, aggravation of preexisting conditions, and other medical determinations;

 s. Refusing to search for or consider all relevant information when investigating and valuing Plaintiff's claim; and,

 t. Any further acts that may be discovered upon submission of the claim file, log notes, depositions of State Farm and its employees, review of any electronic files related to Plaintiff's claim with State Farm.

60. State Farm's aforesaid conduct was unreasonable and State Farm either knew such conduct was unreasonable or recklessly disregarded the fact that the conduct was unreasonable.

61. As a direct and proximate result of State Farm's breach of its duty of good faith and fair dealing, Plaintiff has sustained damages in an amount to be proved at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendant in an amount to be proved at the time of trial for economic and non-economic damages, including but not limited to, past and future medical expenses, past and future pain and suffering, disfigurement, physical impairment, expert witness fees, pre- and post-judgment interest at the statutory rate, costs, statutory relief for breach of contract or unreasonable delay or denial, reasonable costs, attorney fees, and such other and further relief as this Court deems appropriate or permitted by Colorado law.

**JURY TRIAL DEMANDED**

Respectfully submitted this 30th day of June, 2023.

        Respectfully submitted,

        Eddington Law Firm, LLC

        *A **duly signed original is on file at**
        **The Eddington Law Firm, LLC***

        */s Wesley L. Eddington, Esq.*
        Wesley L. Eddington

Plaintiff's Address:
365 Josephine St., Unit A
Denver, CO 80206

14